IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| SUSAN E. HARRIMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-1102-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| KATHERINE A. COMPTON and LEWIS, BRISBOIS, BISGAARD AND SMITH, LLP, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants Katherine A. Compton ("Compton") and Lewis, Brisbois, Bisgaard and Smith, LLP's ("Lewis Brisbois") (collectively, "defendants") motions to dismiss, ECF Nos. 4 and 10. For the reasons set forth below, the court denies the first motion to dismiss as moot, grants the second motion to dismiss, and dismisses the case without prejudice.

## I. BACKGROUND

This legal malpractice action arises from a Texas lawyer and her law firm's representation of plaintiff Susan E. Harriman ("Harriman") in Texas litigation that itself arose from events that occurred only in Texas. During the relevant time period, Harriman was an investment banker and registered investment advisor with IMS Securities, Inc. ("IMS"), a Texas corporation. In 2015, Palmaz Scientific, a medical technology company headquartered in Texas, sued Harriman in the United States District Court for the Western District of Texas. The district court dismissed that action on jurisdictional

1

grounds. Shortly thereafter, Harriman sued Palmaz and related parties[1] in Texas state court, where Palmaz asserted counterclaims against Harriman for tortious interference with existing contracts, tortious interference with business relations, defamation, and business disparagement (the "underlying Texas litigation"). ECF Nos. 10-2, 10-3. Palmaz's counterclaims in the underlying Texas litigation alleged that in 2012 Harriman met with the CEO of Palmaz in Palmaz's Dallas, Texas office to solicit business on behalf of IMS. According to the counterclaims, when Palmaz declined her offer, Harriman became verbally abusive, threatening, and eventually set out on a "delusional and malicious campaign of economic terrorism" designed to sink Palmaz's business. ECF No. 10-3 at 5. Palmaz specifically alleged, among other things, that Harriman made false and defamatory statements about Palmaz to potential investors, namely in the Dallas, Texas area. Id. at 11–17.

In March 2018, Harriman's insurer, Travelers Insurance Company, assigned Lewis Brisbois to represent Harriman in the underlying Texas litigation. Compton, a Texas lawyer working in Lewis Brisbois's Dallas office, served as lead attorney. Around the same time that defendants took Harriman's case, Palmaz filed two motions in the underlying Texas litigation: a motion for a temporary restraining order and a motion for temporary injunction. In the instant action, Harriman alleges that defendants were negligent in their handling of each of the two motions. With respect to the motion for a temporary restraining order, Harriman alleges that defendants agreed to a court order that "was materially different from the [o]rder that [Harriman] had agreed to," putting her "in

---

[1] The court refers to Palmaz and the related parties in the underlying Texas litigation collectively as "Palmaz."

2

an extremely difficult position financially." ECF No. 1-1, Compl. ¶ 20. With respect to the motion for temporary injunction, Harriman alleges that defendants, in litigating the motion, negligently disclosed to Palmaz an allegedly privileged and sensitive email from Harriman to Jerry Theos ("Theos"), a South Carolina attorney. The court in the underlying Texas litigation considered the email in resolving Palmaz's request for an injunction, finding that the email was not privileged under the crime-fraud exception. ECF No. 10-4, Compton Aff. ¶¶ 42–43. Harriman and Palmaz settled the underlying Texas litigation in November 2018.

On March 12, 2021, Harriman filed this legal malpractice action against defendants in the Charleston County Court of Common Pleas, asserting claims for professional negligence, breach of fiduciary duties, and breach of contract. Compl. On April 14, 2021, defendants removed the action to this court. ECF No. 1. On April 21, 2021, defendants filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Northern District of Texas. ECF No. 4. Harriman filed an amended complaint on April 26, 2021, ECF No. 5, and responded to the motion to dismiss on May 17, 2021, ECF No. 8. In light of the amended complaint, defendants filed a second motion to dismiss for lack of personal jurisdiction on May 20, 2021. ECF No. 10. Harriman responded on June 3, 2021, ECF No. 14, to which defendants replied on June 10, 2021, ECF No. 15. Accordingly, this matter is now ripe for the court's review.

## II. STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). When the court decides a personal jurisdiction challenge without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." In re Celotex, 124 F.3d at 628 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). Still, the court need not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### B. Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a). The burden is on the moving party to show by a preponderance of the evidence "that transfer to another forum is proper." State Farm Fire & Cas. Co. v. Blanton, 2014 WL 7146980, at *2 (D.S.C. Dec. 15, 2014) (citations omitted). The decision to transfer a case to another venue is "committed to the discretion of the district court," In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984) (citations omitted), requiring the court to

undertake "an individualized, case-by-case consideration of convenience and fairness" and "to weigh in the balance a number of case-specific factors," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted).

### III.   DISCUSSION

In their motion, defendants ask the court to dismiss this action for lack of personal jurisdiction or, in the alternative, transfer the action to the Northern District of Texas.[2] Resolution of the instant motion requires the court to analyze its ability to exercise personal jurisdiction over defendants under South Carolina's long-arm statute and in consideration of their protections under the Due Process Clause of the Constitution. Because defendants' South Carolina contacts do not support personal jurisdiction and because subjecting defendants to suit in South Carolina would be constitutionally unreasonable, the court grants the motion and dismisses this action for lack of personal jurisdiction.

In evaluating a challenge to personal jurisdiction, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, the forum state's long-arm statute must authorize the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if its exercise of personal jurisdiction is consistent with due

---

[2] As an initial matter, Harriman's filing of the amended complaint, ECF No. 5, renders defendants' initial motion to dismiss, ECF No. 4, moot. See Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect."); see also Turner v. Kight, 192 F. Supp. 2d 391, 397 (D. Md. 2002) (denying as moot motions to dismiss filed prior to an amended complaint); McCoy v. City of Columbia, 2010 WL 3447476, at *1–2 (D.S.C. Aug. 31, 2010) (same). Accordingly, the court denies as moot defendants' first motion to dismiss, ECF No. 4, and instead considers defendants' renewed motion to dismiss, ECF No. 10.

process.  Id.  South Carolina's long-arm statute extends its reach to the outer limits allowed by the Due Process Clause.  Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002).  Consequently, the two-step inquiry compresses into a single question—whether the court's exercise of personal jurisdiction comports with due process.  Sonoco Prod. Co. v. Inteplast Corp., 867 F. Supp. 352, 354 (D.S.C. 1994).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980).  Under the minimum contacts test, a nonresident defendant must have certain minimum contacts with the forum state such that the suit does not offend "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945).  Due process is satisfied where the court asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," World-Wide Volkswagen, 444 U.S. at 297.  After a showing of the defendant's purposeful availment, the fairness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy.  Id. at 292.  Personal jurisdiction comes in two forms: general and specific, each of which the court discusses in turn.

The court has little difficulty concluding that general jurisdiction is lacking here.  General jurisdiction over Compton exists only in the state of her domicile.  Daimler AG v. Bauman, 571 U.S. 117, 137 (2014).  There is no dispute that Compton is domiciled in Texas, meaning that she is not subject to general jurisdiction in South Carolina.  Turning

to Lewis Brisbois, general jurisdiction over a corporation exists "when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Subject only to narrow exception, a corporate defendant is "essentially at home" in the state under the laws of which it was incorporated and the state in which it has its principal place of business. Daimler, 571 U.S. at 137. Lewis Brisbois is a California limited liability partnership that maintains its principal place of business in Los Angeles. While Harriman has demonstrated that Lewis Brisbois has done some business in South Carolina and employs partners that have travelled to the state, these contacts are far too attenuated and sporadic to render Lewis Brisbois "at home" in South Carolina. As such, neither defendant is subject to general jurisdiction here.

Specific jurisdiction, on the other hand, arises when a cause of action is related to the defendant's activities within the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether the defendant purposely availed itself of the privileges of conducting activities in the forum state and thus invoked the benefits and protections of its laws, (2) whether the plaintiff's claims arise out of or relate to those forum-state activities, and (3) whether the exercise of jurisdiction is constitutionally reasonable. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)). To show that the exercise of specific jurisdiction over a defendant comports with due process, a

7

plaintiff "must prevail on each prong." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016).

The Supreme Court recently clarified that the second prong of the specific jurisdiction inquiry—requiring that the plaintiff's suit arise from or relate to the defendant's forum-state contacts—does not "require proof of causation." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1026 (2021). In other words, a plaintiff need not show that her claim "came about because of the defendant's in-state conduct." Id. The specific jurisdiction test is more expansive (and as a result, more nebulous), supporting a court's exercise of jurisdiction over an out-of-state defendant where that defendant's in-state contacts "relate to" the plaintiff's claim. Id. (emphasis in original). Even so, the Supreme Court made clear in Ford that not every connection between a plaintiff's claim and defendant's contacts will do. Id. "[T]he phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." Id. At bottom, specific jurisdiction requires a direct, meaningful connection between the defendant's forum-state contacts and the plaintiff's claim. Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty., 137 S. Ct. 1773, 1781 (2017). In determining whether such a connection exists, the court should "direct [its] focus to the quality and nature of [the defendant's] contacts." Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003).

Harriman premises her theory for specific jurisdiction on several of defendants' South Carolina-related activities. Unfortunately for Harriman, each of those contacts fails under either the first or second prong of the Fourth Circuit's jurisdictional test. With respect to the first, Harriman must demonstrate that defendants purposefully availed

themselves to suit in South Carolina by deliberately directing activities to the state. Harriman's first argument—that her own South Carolina domicile supports the court's exercise of jurisdiction over defendants—fails on this front. Harriman claims that she "moved her legal domicile from Texas to South Carolina" in 2017, shortly before defendants took up her case.[3] But Harriman's domicile is irrelevant here because the court's jurisdictional inquiry focuses on the "contacts that the 'defendant himself' creates with the forum . . . with regard to the defendant's contacts with the forum itself, not with persons residing there." Walden v. Fiore, 571 U.S. 277, 277 (2014) (quoting Burger King, 471 U.S. at 475). Put simply, "[t]he plaintiff cannot be the only link between the defendant and the forum." Id. That axiomatic doctrine holds true in the context of legal malpractice actions, even where the attorney agreed to represent a forum-state client. Cape v. von Maur, 932 F. Supp. 124, 128 (D. Md. 1996) ("[C]ase law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which a client resides.") (collecting cases).

Just as Harriman's contacts cannot support specific jurisdiction here, neither can those of third parties. Harriman argues that defendants' disclosure of an email during

---

[3] The parties hotly dispute whether Harriman was a domiciliary of Texas or South Carolina at the time defendants took on her representation. Harriman attests that she permanently changed her residence to South Carolina in 2017. ECF No. 8-4 ¶ 2. Defendants have presented some evidence to the contrary: for example, Harriman previously attested to being a citizen of Texas in the underlying Texas litigation in 2018, only two weeks before Lewis Brisbois appeared on her behalf, ECF No. 15-2, and she maintained a Texas driver's license until 2019, ECF No. 15 at 4. Given the court's duty at this juncture to "draw the most favorable inferences for the existence of jurisdiction," the court assumes the truth of Harriman's side of the story. In re Celotex, 124 F.3d at 628.

discovery in the underlying litigation constitutes a contact worthy of specific jurisdiction. Not so. There is no dispute that defendants produced the allegedly privileged email while in Texas to counsel for Palmaz, also located in Texas, and there is likewise no dispute that defendants litigated issues related to its production exclusively in Texas. Harriman argues that defendants' production of the email serves as a South Carolina contact because the email was sent from Harriman to Theos—a South Carolina attorney. To be clear, defendants merely produced the email between Harriman and Theos in the underlying Texas litigation—they did not themselves have any contact with Theos. Producing an email in Texas to another party in Texas is not a means by which one avails itself to South Carolina. That the email's recipient was a South Carolina citizen does not render defendants' disclosure of the email a purposefully availing contact with South Carolina. See Helicopteros, 466 U.S. at 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); Walden, 571 U.S. at 291 (2014) ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

Similarly, Harriman argues that specific jurisdiction exists here because defendants, in the underlying Texas litigation, agreed to the temporary restraining order, which "undoubtedly affected [ ] Harriman's assets and property in South Carolina." ECF No. 8 at 10. Again, this is not the kind of forum-state contact that might support jurisdiction because it evinces no purposeful availment on defendants' part. Defendants' activities related to the temporary restraining order took place in Texas; the fact that those activities affected Harriman's assets in South Carolina is of no moment. Ford, 141 S. Ct.

at 1025 (noting that a purposefully availing contact "must show that the defendant deliberately 'reached out beyond' its home").[4] In short, Harriman and third parties' ties to South Carolina cannot support the court's exercise of specific jurisdiction over defendants here.

The only other South Carolina contact to which Harriman points fails under the second prong of the Fourth Circuit's test, which requires her to demonstrate that her claims arise from or relate to that contact. Harriman notes that Compton scheduled two depositions and agreed to defend a third in Charleston, South Carolina during the underlying Texas litigation. To be sure, Compton's trip to Charleston constitutes a purposefully availing contact with South Carolina because it is a direct and deliberate business activity within the state. However, Harriman fails to demonstrate how her claims arise from or relate to this single South Carolina contact, meaning that it, too, cannot subject defendants to personal jurisdiction here.

While in Charleston, Compton deposed James DeLuca ("DeLuca"), Harriman's ex-fiancé, and prepared for but cancelled the depositions of DeLuca's nephew and Harriman herself. Each of these depositions related to Palmaz's motion for temporary injunction, which alleged under the Texas Uniform Fraudulent Transfers Act ("TUFTA") that Harriman was fraudulently transferring assets to protect them from a potential judgment. Harriman argues that these depositions "affected the defense of the TUFTA

---

[4] In Calder v. Jones, the Supreme Court established the "effects test," under which a court may exercise specific jurisdiction over an out-of-state defendant that has acted outside of the forum in a manner that injures someone residing in the forum. 465 U.S. 783 (1984). But this test only applies where, inter alia, "the defendant committed an intentional tort" and "the defendant expressly aimed his tortious conduct at the forum." Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 398 n.7 (4th Cir. 2003). Both elements are lacking here, making the effects test inapplicable.

action and the case in general." ECF No. 8 at 4. But Harriman fails to explain how these depositions actually "relate to" her claims. Harriman's complaint in this action makes clear that her claims arise from two allegedly negligent acts: first, the defendants' agreement to the temporary restraining order without obtaining Harriman's informed consent, compl. ¶¶ 17–23, and second, defendants' disclosure of the allegedly privileged email between Harriman and Theos, id. ¶¶ 25–32. There is no allegation in the complaint that Compton (or Lewis Brisbois) was negligent in her handling of the Charleston depositions or that the Charleston depositions relate to Harriman's claims at all.[5] Further, despite filing a 19-page, single-spaced brief,[6] Harriman plainly fails to connect any dots between her claims and the Charleston depositions in her defense of the motion to dismiss. In other words, Harriman has not demonstrated that the Charleston depositions "relate to" her claims. As the Supreme Court recently clarified, the phrase "'relate to' incorporates real limits[.]" Ford, 141 S. Ct. at 1026. In short, Compton's single trip to Charleston is too tenuously related to Harriman's claims to justify subjecting defendants to suit in South Carolina, especially given the "quality and nature" of defendants' forum-state contacts. Carefirst, 334 F.3d at 397; see Bristol-Myers Squibb, 137 S. Ct. at 1781

---

[5] In her response to the motion to dismiss, Harriman states that the cancellation of Harriman and DeLuca's nephew's depositions make up "part of the tortious conduct giving rise to this malpractice suit." ECF No. 8 at 10. But this lone, naked statement in Harriman's brief is wholly unsupported by her complaint, which makes clear that this action is based upon defendants' agreement to the temporary restraining order and disclosure of the allegedly privileged email, not Compton's alleged decision to cancel depositions. The complaint makes no mention of the Charleston depositions whatsoever.

[6] By local rule, all papers filed with the court must be double-spaced, Local Civ. Rule 1.05 (D.S.C.), and double-spaced briefs must not exceed 35 pages, Local Civ. Rule 7.05 (D.S.C.).

("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.").

Moreover, subjecting defendants to suit in South Carolina would not be constitutionally reasonable. In determining whether its exercise of specific jurisdiction is reasonable, a court should evaluate: "[1] the burden on the defendant, [2] the forum state's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies." Burger King, 471 U.S. at 477 (citing World-Wide Volkswagen, 444 U.S. at 292 (internal quotation marks omitted)). The court views these factors through the lens of the nature and quality of the defendant's forum-state contacts. See Grayson Consulting, Inc. v. Cathcart, 2013 WL 5755400, at *3 (D.S.C. Oct. 23, 2013) ("The weaker the contacts, . . . the less likely it is that jurisdiction is reasonable.").

The first factor—the court's "primary concern"—is the burden on defendants. Bristol-Myers Squibb, 137 S. Ct. at 1780. This factor weighs heavily against exercising jurisdiction because defendants are citizens of Texas and California, and especially because Compton lives and works in Texas with no connections to South Carolina save for attending a single deposition in the state in 2018. Forcing Compton to defend a lawsuit—and against a particularly litigious plaintiff at that—would impose too great a burden. Turning to the second factor, South Carolina has little interest in the resolution of this controversy, given that the events from which it arose occurred exclusively in Texas. While the third factor weighs in Harriman's favor, given that South Carolina is a

13

convenient forum for her (and her alone), the final two factors also weigh against exercising jurisdiction. There is no dispute that the vast majority of the relevant evidence and witnesses are located in Texas, and, as the court has discussed at length, defendants' South Carolina contacts are weak. At bottom, this is a Texas controversy that Harriman wants resolved in South Carolina. But indulging that wish would not be fair to defendants, as the relevant factors weigh decidedly against subjecting them to suit in this state.

Furthermore, the cases on which Harriman relies are unavailing. In the first, Motley Rice, LLC v. Baldwin & Baldwin, LLP, this court exercised specific jurisdiction over an out-of-state law firm in a fee-sharing dispute brought by a South Carolina law firm. 518 F. Supp. 2d 688 (D.S.C. 2007). There, the parties had a 19-year business relationship and entered into fee-sharing agreements that contemplated South Carolina as a dispute resolution forum. Further, that defendant's employees traveled to South Carolina in connection with the underlying cases on multiple occasions. The court found these contacts supported its exercise of specific jurisdiction. Simply put, the defendant's contacts in Motley Rice were far more substantial, consistent, and intentional than defendants' contacts are here. Defendants did not enter into any agreement that contemplates South Carolina as a forum for dispute resolution, they do not have a long-standing relationship with Harriman, and they travelled to South Carolina on Harriman's behalf on only one occasion. Thus, Motley Rice is unavailing.

So too is Eng. & Smith v. Metzger, the next case Harriman cites. 901 F.2d 36 (4th Cir. 1990). There, like in Motely Rice, the court exercised jurisdiction over an out-of-state law firm based upon the significant purposefully availing contacts it maintained

with the forum state, Virginia.  Id. at 39–40 ("The purposeful direction of activities toward the forum is present here.  [Defendant] initiated contact with [plaintiff] in Virginia, entered into contracts with [plaintiff] by virtue of action taken in Virginia, and carried on a continuing relationship with [plaintiff] in Virginia while the two worked on the [underlying] case.").  Again, the quality and nature of the defendant's forum-state contacts there were materially different than defendants' contacts here.  The same is true with respect to the third, fourth, and fifth cases Harriman presents.  Hirschkop Grad, PC v. Robinson, 757 F.2d 1499 (4th Cir. 1985); Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292 (4th Cir. 2012); CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 289 (4th Cir. 2009).  Those cases involved significantly more substantial and direct contacts than the ones defendants have with South Carolina here.  For example, the defendants in those cases travelled to the forum state to discuss representation and negotiate fees, Hirschkop, 757 F.2d at 1503; "had an office and employees in the forums state," Tire Eng'g, 682 F.3d at 304; and engaged in unlawful conduct in the forum state that formed "the genesis of [the] dispute," CFA Institute, 551 F.3d at 295.  The relative insignificance of defendants' contacts with South Carolina distinguish this action from those cases.

    In sum, defendants' infrequent and insubstantial contacts with South Carolina cannot support the court's exercise of specific jurisdiction here.  And even if those contacts could support jurisdiction, exercising it over defendants and thereby subjecting them to suit halfway across the country would not be constitutionally reasonable.

Accordingly, the court grants the motion to dismiss and dismisses this action without prejudice.[7]

## IV. CONCLUSION

For the foregoing reasons the court **DENIES AS MOOT** defendants' first motion to dismiss, ECF No. 4, **GRANTS** defendants' second motion to dismiss, ECF No. 10, and **DISMISSES** the case without prejudice.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**June 29, 2021
Charleston, South Carolina**

---

[7] Because the court resolves defendants' motion on jurisdictional grounds, it need not reach their request to transfer venue.